## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BRYAN REPETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-101 |
| | ) | |
| ST. MATTHEW'S UNIVERSITY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ANSWER TO PLAINTIFF'S COMPLAINT

Defendant St. Matthew's University, Inc. ("SMU, Inc." or "Defendant") answers the correspondingly numbered paragraphs of the Complaint of Plaintiff Bryan Repetto ("Repetto" or "Plaintiff") as follows:

## PARTIES AND JURISDICTION

1.      No response is required as the Complaint speaks for itself.

2.      SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegation that Repetto maintained an address in South Portland, Maine in 2005.  SMU, Inc. admits that Repetto attended classes at the School's temporary campus in South Portland, Maine during the Spring 2005 term.  SMU, Inc. admits that Repetto listed a Portland, Maine address on forms submitted in 2006.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

3.      SMU, Inc. admits that it is a for-profit Delaware corporation registered to do business in the State of Maine; that it maintains a registered agent in Augusta, Maine; that a subsidiary of SMU, Inc. owns and operates St. Matthew's University School of Medicine (the "School"); that its agents perform certain management services for the School pursuant to a management services contract; that the School is a private, Cayman Islands-based medical

school; and that the School maintained a principal campus on Grand Cayman and a branch campus in Windham, Maine during all times relevant to this complaint, although Hurricane Ivan rendered the Grand Cayman campus temporarily unavailable in September 2004, and students enrolled to take classes at the Grand Cayman campus during the Spring 2005 term received instruction at a temporary campus in South Portland, Maine.  SMU, Inc. denies any remaining allegations of this paragraph.

4.      No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

5.       No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

## FACTS COMMON TO ALL COUNTS

6.      SMU, Inc. admits that Repetto submitted transcripts from Sonoma State University and the University of Nevada, Reno with his application for admission, and admits that the University of Nevada, Reno transcript Repetto submitted indicates that he was awarded a Bachelor of Science degree in Biology in 2002.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

7.      SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations that Repetto planned to be a physician and had difficulty with the undergraduate pre-medical science curriculum.  SMU, Inc. admits that Repetto's grades in the courses that the School requires for admission were not as high as those of the majority of the School's Spring 2005 incoming class, but denies that Repetto's grades in these courses disqualified him from admission to the School.  SMU, Inc. denies any remaining allegations of this paragraph.

8.     SMU, Inc. admits that Repetto submitted an unofficial transcript from Ross University School of Medicine ("Ross University") with his application for admission, which was printed on November 15, 2004 and indicates that Repetto had attended Ross University for four semesters at that time.  SMU, Inc. admits that Repetto's graduate grade point average at Ross University did not meet or exceed 3.0, but denies that courses Repetto took at Ross University were required for admission, and denies that Repetto's graduate grade point average at Ross University disqualified him from admission to the School.  SMU, Inc. lacks information sufficient to form a belief as to the truth of any remaining allegations of this paragraph.

9.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

10.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

11.     SMU, Inc. admits that at the time Repetto applied for admission, Fall 2004, the School's Catalog stated, "The committee selects students who exhibit the strongest potential to flourish in a medical school environment and execute the duties of a medical doctor professionally and ethically"; and further provided, "A cumulative grade point average of 3.0 is preferred.  Applicants with lower grade point averages are encouraged to apply if they have other accomplishments or work experience that demonstrates their aptitudes"; required submission of recent MCAT scores when available; and described recommendations as "an important part of the application."  SMU, Inc. denies any remaining allegations of this paragraph.

12.     SMU, Inc. admits that Repetto's graduate grade point average at Ross University did not meet or exceed 3.0; that Repetto's undergraduate grade point average at the University of Nevada, Reno did not meet or exceed 3.0; and that Repetto's undergraduate grade point average

at Sonoma State University did not meet or exceed 3.0.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegation that Repetto spoke to J.P. Yates and Darryl Frazier about his grade point average.  SMU, Inc. admits that the School's admissions policy during the Fall 2004 term was to use the highest grade achieved in each science course to calculate a student's grade point average unless certain exceptions applied, but denies that the School relied upon the calculation of Repetto's grade point average submitted with his application, rather than admissions officers' own calculations based on transcripts provided. SMU, Inc. admits that Repetto's graduate grade point average at Ross University did not meet or exceed 3.0 when recalculated using only the highest grade he achieved in each of his science courses; that Repetto's undergraduate grade point average at the University of Nevada, Reno did not meet or exceed 3.0 when recalculated using only the highest grade he achieved in each of his science courses; and that Repetto's undergraduate grade point average at Sonoma State University did not meet or exceed 3.0 when recalculated using only the highest grade he achieved in each of his science courses.  SMU, Inc. denies any remaining allegations of this paragraph.

13.     SMU, Inc. admits that Repetto's application for admission stated that he was attending Ross University at the time of his application.  SMU, Inc. denies that admissions officers of the School considered Repetto's full academic record – including test scores, recommendations, and prior experience – indicative of a lack of potential to flourish in the medical school environment.  SMU, Inc. denies any remaining allegations of this paragraph.

14.     SMU, Inc. admits that at the time Repetto applied for admission, Fall 2004, the School's Catalog stated, "If the student's credentials meet the admissions criteria, the candidate will be interviewed in person or by telephone"; and further provided, "A completed application

file . . . will include . . . [o]fficial academic transcripts." SMU, Inc. denies that admissions officers of the School admitted Repetto without a telephone interview. SMU, Inc. admits that at the time of Repetto's admission, the School had not received an official transcript from Ross University although the School had received an unofficial transcript and had notified Repetto that he needed also to provide an official transcript. SMU, Inc. denies any remaining allegations of this paragraph.

15.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

16.     SMU, Inc. admits that the School has not yet been approved in California, that receipt of a degree from the School does not render an individual eligible for licensure as a physician there, and that the School's officials at various times have been publicly optimistic that the School will be approved in California. SMU, Inc. denies that the School's officials at any time misrepresented the likelihood of California approval. SMU, Inc. lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

17.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

18.     SMU, Inc. admits that Repetto began attending the School in January 2005. SMU, Inc. denies any remaining allegations of this paragraph.

19.     SMU, Inc. admits that the Division of Licensing of the Medical Board of California ("Division of Licensing") inspected the School with regard to determining whether it should be approved in California. SMU, Inc. admits that the Chief of the Licensing Program submitted a report on the site visit ("California Site Team Report") to the members of the Division of Licensing on January 24, 2005, noting that pursuant to the governing regulation the

School had until February 14, 2005 to notify staff of the Division of Licensing of any factual

errors in the team's report.  SMU, Inc. admits that the California Site Team Report listed the

following as "Problem Areas Affecting Entire Program":  "[a]n apparently high attrition rate,"

"[a]n evolving, still unproven preclinical curriculum," and "[l]imited communication with the

basic science program in Maine as regards course content, modifications, examinations, and the

lack of formal processes for such communications."  SMU, Inc. admits that the California Site

Team Report recommended denial of recognition of the School after stating, "[The School] is

apparently off to a good start and gives promise of a potentially bright future.  At present, it is

still in early phases of development with a very limited track record . . . .  A repeat evaluation

should be undertaken after remediation of the problem areas and more evidence of satisfactory

performance is available."  SMU, Inc. denies any remaining allegations of this paragraph.

      20.     SMU, Inc. admits that the Medical Board of California disapproved the School on

February 18, 2005, and that as a result receipt of a degree from the School does not render an

individual eligible for licensure as a physician in California.  SMU, Inc. denies any remaining

allegations of this paragraph.

      21.     SMU, Inc. admits that Dr. Michael Harris, then the School's president, sent an

email to all of the School's students on February 20, 2005 regarding the California Site Team

Report and the February 18, 2005 Medical Board of California decision not to approve the

School.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegation

that Repetto received a copy of this email through his School email account.  SMU, Inc. admits

that Dr. Harris's email stated that the School's "Board of Directors . . . review[ed] the draft

report and found it riddled with over forty factual errors"; that "Ross University and AUC were

previously denied and ultimately prevailed in obtaining California approval.  So too will St.

Matthew's University"; and that "[l]egal counsel has been retained to assess the rights of the University in what the Board of Directors feels has been an act of great injustice and irreparable harm caused by the actions of the California Medical Board Division of Licensing."  SMU, Inc. denies any remaining allegations of this paragraph.

22.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph so far as they concern what Repetto allegedly "learned."  SMU, Inc. denies that the School attempted to withdraw its application for licensure in California during October 2004, but admits that the School attempted to withdraw its application for licensure in California on December 7, 2004 pursuant to the recommendation of the Deputy Executive Director of the California Board of Medical Examiners.  SMU, Inc. admits that the School received the California Site Team Report on December 17, 2004.  SMU, Inc. denies that the School's officials at any time misrepresented the likelihood of California approval.  SMU, Inc. denies any remaining allegations of this paragraph.

23.     SMU, Inc. denies that the School's officials at any time misrepresented the likelihood of California approval or the features of the School's program.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

24.     SMU, Inc. admits that Dr. Harris's email included a link to the California Site Team Report and a document submitted by the School to the Division of Licensing on February 4, 2005 notifying the Medical Board of California of factual inaccuracies contained in the California Site Team Report ("Factual Error Notification").  SMU, Inc. denies any remaining allegations of this paragraph.

25.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

26.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegation that Repetto read the California Site Team Report and the Factual Error Notification by clicking on the link which Dr. Harris's email provided to him.  SMU, Inc. admits that the Factual Error Notification made assertions relating to the School's admissions policies and practices and stated, "The course text, syllabi, examinations, and content are the same in the three basic sciences courses in Cayman and Maine."  SMU, Inc. admits that the Factual Error Notification included claims about the School's faculty, facilities, research, and methods of selection of sites for clinical training.  SMU, Inc. denies any remaining allegations of this paragraph.

27.     SMU, Inc. denies that officials of the School made any false or misleading assertions.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

28.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

29.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegation that Repetto has family in Texas and considered that state another possible location for him to practice medicine.  SMU, Inc. admits that Mr. Yates posted the following on ValueMD Medical Schools Forum on April 12, 2005:  "Texas law states that the grad can still be licensed if the disapproval [by another state] was unfounded, which anyone who has read the publications can see it was," and "I counsel students to check the rules and laws themselves, rather than relying on others to provide the information."  SMU, Inc. denies that Texas had not recognized

the organization accrediting the School before the California Site Team Report was submitted to the members of the Division of Licensing.  SMU, Inc. admits that after the California decision not to approve the School, Texas placed the School on its list of allegedly "fraudulent or substandard" institutions.  SMU, Inc. denies any remaining allegations of this paragraph.

30.      SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph.

31.      SMU, Inc. admits that Repetto moved from the School's Grand Cayman campus, where he received instruction for the Summer 2005 and Fall 2005 terms, to its campus in Windham, Maine at the beginning of the Spring 2006 term.  SMU, Inc. admits that Repetto continued in the Master's Degree in Health Science Administration program at St. Joseph's College of Maine in Standish, Maine ("St. Joseph's Program") during the Spring 2006 term. SMU, Inc. denies that Repetto began participation in the St. Joseph's Program while a student at the Grand Cayman campus, as Repetto began participation in the St. Joseph's Program while a student at the temporary campus in South Portland, Maine during the Spring 2005 term.  SMU, Inc. admits that officials of the School informed Repetto that fourth semester students at the School's Windham, Maine campus were required to remain enrolled in the St. Joseph's Program in order to continue their medical studies in Windham, Maine; and that during the Spring 2006 term, Repetto was in his fourth semester in the St. Joseph's Program.  SMU, Inc. denies any remaining allegations of this paragraph.

32.      SMU, Inc. denies the allegations of this paragraph.

33.      SMU, Inc. admits that Repetto took Pharmacology and Pathology II for the first time during the Spring 2006 term.  SMU, Inc. admits that Dr. James Pringle encouraged Repetto to withdraw from Pharmacology and Pathology II during the Spring 2006 term after Repetto

informed Dr. Pringle that he would likely fail the courses.  SMU, Inc. denies that Dr. Pringle suggested that withdrawals should be taken lightly.  SMU, Inc. admits that Dr. Pringle told Repetto that the withdrawals would not significantly impact him in a negative way with respect to residency programs if he subsequently retook and did well in the courses.  SMU, Inc. denies any remaining allegations of this paragraph.

34.     SMU, Inc. admits that Repetto took and failed Pharmacology and Pathology II during the Summer 2006 term.  SMU, Inc. denies any remaining allegations of this paragraph.

35.     SMU, Inc. denies that Dr. Pringle or any other official of the School ever told Repetto that two sections of a course taught by two different professors would be "equal," but SMU, Inc. admits that the Factual Error Notification stated, and Dr. Pringle assured Repetto, that officials of the School took steps to ensure that courses taught in Windham, Maine and courses taught in Grand Cayman would be as equal as possible.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegation that Repetto "therefore did not consider returning to the Cayman Islands campus to attempt these courses."  SMU, Inc. denies that Dr. Pringle told Repetto that he could not return to the Grand Cayman campus once he had enrolled in classes taught in Windham, Maine.  SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph so far as they concern what Repetto allegedly "learned." SMU, Inc. denies that the failure rate at the Grand Cayman campus was significantly lower than the failure rate at the Windham, Maine campus.  SMU, Inc. admits that students taught in Windham, Maine were given the opportunity to request return to the Grand Cayman campus; but denies that students taught in Windham, Maine who were having difficulty passing classes were instructed or encouraged to return to the Grand Cayman campus in order to more easily pass classes.  SMU, Inc. denies any remaining allegations of this paragraph.

36.     SMU, Inc. admits that Repetto took Pharmacology and Pathology II for the third time during the Fall 2006 term.  SMU, Inc. denies any remaining allegations of this paragraph.

37.     SMU, Inc. admits that Dr. Pringle met with Repetto on November 7, 2006, and that Repetto took the Fall 2006 Pathology II examination administered on November 8, 2006. SMU, Inc. denies that Dr. Pringle told Repetto he would fail the courses.  SMU, Inc. admits that Dr. Pringle told Repetto that he should be considering other options since Repetto had withdrawn from Pathology II and Pharmacology once, failed both classes once, and was failing Pathology II and Pharmacology after multiple examinations in each course.  SMU, Inc. admits that Dr. Pringle told Repetto that Dr. Pringle had never made a grade exception for a student, but SMU, Inc. denies that Dr. Pringle told Repetto that the School had never made a grade exception for a student.  SMU, Inc. denies any remaining allegations of this paragraph.

38.     SMU, Inc. admits that Repetto failed the November 8, 2006 Pathology II examination.  SMU, Inc. admits that Dr. Pringle met with Repetto after Repetto failed both the November 8, 2006 Pathology II examination and the November 14, 2006 Pathology examination.  SMU, Inc. denies that Dr. Pringle raised the possibility of readmission to the School during that meeting.  SMU, Inc. admits that Dr. Pringle stated that if Repetto took remedial courses in both Pathology and Pharmacology with demonstrated success his chances of readmission to the School upon reapplication would be increased.  SMU, Inc. denies any remaining allegations of this paragraph.

39.     SMU, Inc. admits that Repetto failed Pharmacology and Pathology II for the second time during the Fall 2006 term.  SMU, Inc. denies any remaining allegations of this paragraph.

40.     SMU, Inc. admits that the Student Handbook produced January 2004 states, "In all cases of academic dismissal, students are not eligible for re-admission unless the student is successful in an Appeals Committee review."  SMU, Inc. admits that Appendix D of the Student Handbook, entitled "Academic Grievances:  Reporting and Hearing Procedures" explains in detail the procedure for petitioning the Grievance Committee for review of grades and appealing decisions of the Grievance Committee.  SMU, Inc. denies any remaining allegations of this paragraph.

41.     SMU, Inc. admits that Repetto inquired about the procedures for appeal and readmission during the Fall 2006 term, prior to receiving his final grades for that term.  SMU, Inc. admits that Repetto wrote to Dr. Gordon Green and Dr. Ezzeldin Nasser during the Fall 2006 term, but lacks information sufficient to form a belief as to the truth of the allegation that Repetto wrote to Dr. Gary McCutcheon and Dr. Pringle during the Fall 2006 term.  SMU, Inc. denies that Dr. Nasser did not reply to Repetto's inquiry.  SMU, Inc. denies that Dr. Green indicated that he would support Repetto's readmission should he be dismissed, but admits that Dr. Green stated he would support Dr. Pringle's advice with regards to readmission.  SMU, Inc. admits that Dr. Green stated that "any student failing a course take [sic] their case to the grievance committee."  SMU, Inc. admits that Dr. McCutcheon told Repetto that he would discuss the issue of Repetto's possible readmission with the deans.  SMU, Inc. denies any remaining allegations of this paragraph.

42.     SMU, Inc. admits that the School's registrar sent a letter to Repetto dated December 13, 2006 informing Repetto that he had been dismissed "due to a combined total of three failures **and/or** withdrawals from the same course," and stating, "Students have the option **at the end of** each semester to challenge the courses failed that semester with the Grievance

Committee.  Please contact Dr. Nasser at enasser@smu.cayman.com to discuss the option and

the procedures involved.  If you file a grievance and the Committee overturns your grade(s) such

that you do not have a combined total of three failures and/or withdrawals in the same course,

then you will be automatically reinstated and may attend classes this semester." (emphasis

supplied).  SMU, Inc. denies any remaining allegations of this paragraph.

      43.     SMU, Inc. admits that Repetto attempted to contact Dr. Nasser via email to

discuss an appeals committee review of his dismissal on December 16, 2006 and January 2,

2007, during the School's break while Dr. Nasser was away.  SMU, Inc. admits that Dr. Nasser

did not reply to either of Repetto's emails seeking to discuss an appeals committee review of his

dismissal.  SMU, Inc. admits that during the School's break Repetto contacted Dr. Green

inquiring about the procedures for submission of a grievance and readmission.  SMU, Inc. denies

that Dr. Green told Repetto to contact Dr. Pringle.  SMU, Inc. admits that Dr. Green forwarded

Repetto's email to Dr. McCutcheon.  SMU, Inc. lacks information sufficient to form a belief as

to the truth of the allegation that Repetto contacted Dr. Jerry Thornton inquiring about the

procedures for submission of a grievance and readmission during the School's break and that Dr.

Thornton forwarded Repetto's email to Dr. McCutcheon.  SMU, Inc. denies any remaining

allegations of this paragraph.

      44.     SMU, Inc. admits that Repetto never submitted a petition to the Grievance

Committee.  SMU, Inc. denies that students of the School were told that they could appeal a

grade or seek readmission after an academic dismissal without first following the procedures for

petitioning the Grievance Committee explained in Appendix D to the Student Handbook.  SMU,

Inc. admits that Dr. McCutcheon sent Repetto an email on January 5, 2007 which read:  "Per

university policy, I have received your request to review your academic dismissal.

Unfortunately, your request to reinstate you into SMU is denied for two specific reasons and for some general observations.  First . . . you have far exceeded the 24 failing hours that prompts dismissal.  You have failed 30 hours.  The most recent failing grades were 59 and 63 and both of these course [sic] were on second attempts. . [sic]  Second . . . you have either withdrawn or failed Pathology II on three occasions.  [P]er the guidance published in the student handbook this alone is cause for dismissal.  General observations show that by current standards you would not have been admitted to SMU based on your weak undergraduate grades and you would not have been transferred from Ross with the poor performance at that institution.  The combination of weak undergrad, weak performance at Ross, and 30 documented failing credits at St. Matthew's all speak to little likelihood that you will become a successful physician.  Your dismissal is reaffirmed.  I wish you well in future endeavors."  SMU, Inc. denies any remaining allegations of this paragraph.

45.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations that Repetto contacted Dr. Thornton via email regarding his dismissal and that Dr. Thornton made mention of Repetto's financial status, noting the amount of debt he had accumulated during his time as a student at the School.  SMU, Inc. admits that the School's financial aid office notified Repetto on September 29, 2006 that he had exhausted his financial aid eligibility in the Basic Science program (as opposed to the Clinical Science program).  SMU, Inc. denies any remaining allegations of this paragraph.

46.     SMU, Inc. denies the allegations of this paragraph.

47.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegation that Repetto earned a GPA of 3.7 in the St. Joseph's Program.  SMU, Inc. denies that had Repetto filed a petition with the Grievance Committee he would have been able to provide

evidence supporting a passing grade in the classes he had failed.  SMU, Inc. denies that Repetto's scores on the Summer 2006 and Fall 2006 Pharmacology and Pathology II shelf examinations and his grade point average in the St. Joseph's Program would have provided evidence supporting a passing grade in the classes he had failed.  SMU, Inc. denies any remaining allegations of this paragraph.

48.    SMU, Inc. admits that Repetto performed work-study in the School's Maine Campus Library during the Summer 2006 and Fall 2006 terms, and that the School awarded students $15 per properly documented hour for such work during the Summer 2006 term and $10 per properly documented hour for such work during the Fall 2006 term.  SMU, Inc. admits that Repetto served as a Teaching Assistant for Patient-Doctor 4, and that the School awarded students $15 per properly documented hour for such work during the Summer 2006 term and $10 per properly documented hour for such work during the Fall 2006 term.  SMU, Inc. denies any remaining allegations of this paragraph.

49.    SMU, Inc. admits that the School customarily awarded funds to its students for their work-study by crediting the amount awarded against their tuition or other fees owed to the School.  SMU, Inc. denies any remaining allegations of this paragraph.

50.    SMU, Inc. denies the allegations of this paragraph.

51.    SMU, Inc. denies the allegations of this paragraph.

52.    SMU, Inc. admits that the School did not award Repetto funds for work as a Teaching Assistant for Patient-Doctor 4 because Repetto never properly documented hours worked as a Teaching Assistant for Patient-Doctor 4.  SMU, Inc. denies that the School owes Repetto any funds for such work.  SMU, Inc. denies any remaining allegations of this paragraph.

53.     SMU, Inc. admits that Repetto made repeated inquiries regarding the award of funds for work performed in the library and as a Teaching Assistant to which SMU, Inc. responded.  SMU, Inc. denies that the School refused to make payment of funds owed to Repetto.  SMU, Inc. denies any remaining allegations of this paragraph.

## COUNT I:  INTENTIONAL MISREPRESENTATION – SMU REBUTTAL TO CALIFORNIA REPORT

54.     SMU, Inc. incorporates by reference paragraphs 1-53 above.

55.     SMU, Inc. denies the allegations of this paragraph.

56.     SMU, Inc. denies the allegations of this paragraph.

57.     No response is required to the extent this paragraph asserts a conclusion of law. Any allegations of fact against SMU, Inc. are denied.

58.     SMU, Inc. denies the allegations of this paragraph.

59.     SMU, Inc. denies the allegations of this paragraph.

60.     SMU, Inc. denies the allegations of this paragraph.

61.     No response is required to the extent this paragraph asserts conclusions of law.

Any allegations of fact against SMU, Inc. are denied.

## COUNT II:  NEGLIGENT MISREPRESENTATION – SMU REBUTTAL TO CALIFORNIA REPORT

62.     SMU, Inc. incorporates by reference paragraphs 1-61 above.

63.     SMU, Inc. denies the allegations of this paragraph.

64.     No response is required to the extent this paragraph asserts conclusions of law.

Any allegations of fact against SMU, Inc. are denied.

65.     No response is required to the extent this paragraph asserts conclusions of law.

Any allegations of fact against SMU, Inc. are denied.

66.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

67.     SMU, Inc. denies the allegations of this paragraph.

**COUNT III:  INTENTIONAL MISREPRESENTATION – SMU PROGRAM**

68.     SMU, Inc. incorporates by reference paragraphs 1-67 above.

69.     SMU, Inc. denies that the Student Handbook contains descriptions of the course and other educational opportunities offered by the School, but admits that the School's Catalogs for 2004-2005, 2005, and 2005-2006 contain descriptions of the course and other educational opportunities offered by the School and the Student Handbook contains descriptions of other School-related opportunities.  SMU, Inc. denies any remaining allegations of this paragraph.

70.     SMU, Inc. denies that the Student Handbook contains false representations regarding the academic program at the School.  SMU, Inc. denies that the Student Handbook describes an "Individual Advancement Pathway" allowing students who are struggling to take a less rigorous course load, but admits that the School's Catalogs for 2004-2005 and 2005 describe an "Individual Advancement Pathway" allowing "students the option to design their advancement through the coursework of the Basic Sciences, in consultation with a faculty advisor . . . [and] choose to participate in coursework in six semesters, instead of the five semesters of the accelerated program."  SMU, Inc. denies that no such program existed.  SMU, Inc. denies any remaining allegations of this paragraph.

71.     SMU, Inc. denies the allegations of this paragraph.

72.     SMU, Inc. denies that officials of the School made misrepresentations about the nature of the School's programming.  SMU, Inc. denies that officials of the School ever told Repetto that two sections of a course taught by two different professors would be "equal."  SMU,

Inc. admits that officials of the School assured Repetto that they took steps to ensure that courses taught in Windham, Maine and courses taught in Grand Cayman would be as equal as possible. SMU, Inc. denies that officials of the School made untrue statements regarding the comparative difficulty of courses taught in Windham, Maine and courses taught in Grand Cayman.  SMU, Inc. denies any remaining allegations of this paragraph.

73.  SMU, Inc. denies the allegations of this paragraph.

74.  SMU, Inc. denies the allegations of this paragraph.

75.  No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

76.  SMU, Inc. denies the allegations of this paragraph.

77.  SMU, Inc. denies the allegations of this paragraph.

78.  SMU, Inc. denies the allegations of this paragraph.

79.  No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

**COUNT IV:  NEGLIGENT MISREPRESENTATION – SMU PROGRAM**

80.  SMU, Inc. incorporates by reference paragraphs 1-79 above.

81.  SMU, Inc. denies the allegations of this paragraph.

82.  No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

83.  No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

84.  SMU, Inc. denies the allegations of this paragraph.

85.  SMU, Inc. denies the allegations of this paragraph.

## COUNT V:  BREACH OF CONTRACT

86.     SMU, Inc. incorporates by reference paragraphs 1-85 above.

87.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

88.     SMU, Inc. denies the allegations of this paragraph.

89.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

90.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

91.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

92.     SMU, Inc. denies the allegations of this paragraph.

93.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

## COUNT VI:  UNPAID WAGES (26 M.R.S.A. § 626-A)

94.     SMU, Inc. incorporates by reference paragraphs 1-93 above.

95.     SMU, Inc. denies that the School failed to award Repetto funds for hours he worked in the library.  SMU, Inc. admits that the School did not award Repetto funds for work as a Teaching Assistant for Patient-Doctor 4, but denies that the School owes Repetto any funds for such work because Repetto never properly documented hours worked as a Teaching Assistant for Patient-Doctor 4.  SMU, Inc. denies any remaining allegations of this paragraph.

96.     SMU, Inc. admits that Repetto demanded payment for funds he allegedly earned as a Teaching Assistant for Patient-Doctor 4.  SMU, Inc. admits that the School refused to award

Repetto funds for work as a Teaching Assistant for Patient-Doctor 4 because Repetto never properly documented hours worked as a Teaching Assistant for Patient-Doctor 4, but denies that the School refused to make payment of funds owed to Repetto.  SMU, Inc. denies any remaining allegations of this paragraph.

97.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

98.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

99.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

## COUNT VII:  HOUSING DEPOSIT (14 M.R.S.A. § 6034)

100.     SMU, Inc. incorporates by reference paragraphs 1-99 above.

101.     SMU, Inc. admits that in December 2005 Repetto paid a $500.00 room deposit fee to the School.  SMU, Inc. admits that the housing arranged for Repetto, who was a student enrolled at the Grand Cayman campus but taking classes at the temporary campus in South Portland, Maine due to Hurricane Ivan, was planned to be in the Scarborough, Maine Fairfield Inn.  SMU, Inc. denies any remaining allegations of this paragraph.

102.     SMU, Inc. denies that Mr. Yates or written materials assured Repetto that transportation would be provided from the Fairfield Inn in Scarborough, Maine to the St. Joseph's evening classes taught at the temporary campus in South Portland, Maine.  SMU, Inc. denies any remaining allegations of this paragraph.

103.     SMU, Inc. lacks information sufficient to form a belief as to the truth of the allegations of this paragraph so far as they concern what Repetto allegedly "learned."  SMU, Inc.

lacks information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

104.     SMU, Inc. admits that Jonni Tindol managed the temporary campus in South Portland, Maine.  SMU, Inc. admits that Ms. Tindol told students that if transportation to classes were not provided, then they would have a valid reason for breaking their leases and choosing to live elsewhere.  SMU, Inc. denies that Ms. Tindol told students they would receive a refund of their deposits.  SMU, Inc. admits that Ms. Tindol told students to contact the School's Florida office in order to request housing deposit refunds.  SMU, Inc. denies any remaining allegations of this paragraph.

105.     SMU, Inc. admits that Repetto made repeated attempts to obtain a refund of his deposit.  SMU, Inc. admits that Repetto never received a response to his inquiries and never received a refund of his deposit.  SMU, Inc. denies any remaining allegations of this paragraph.

106.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

107.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

108.     SMU, Inc. admits that Repetto made several demands for the return of his deposit, and admits that Repetto specifically notified the School of his intention to bring a legal action to recover his deposit if it was not returned to him.  SMU, Inc. denies any remaining allegations of this paragraph.

109.     SMU, Inc. admits that the School has not returned Repetto's security deposit. SMU, Inc. denies any remaining allegations of this paragraph.

110.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against SMU, Inc. are denied.

## **AFFIRMATIVE DEFENSES**

1.     The Court lacks personal jurisdiction over SMU, Inc., since SMU, Inc. did not directly take the actions alleged in the Complaint or otherwise avail itself of the laws of the State of Maine such that it should reasonably expect to be hailed into court in Maine.

2.     Venue is improper.

3.     The Complaint fails to state a claim upon which relief can be granted because the School at all relevant times was owned and operated by an entity other than SMU, Inc., and any liability for the acts, omissions, or agreements of that entity cannot be attributed to SMU, Inc.

4.     The Complaint fails to state a claim upon which relief can be granted with respect to Count V, since Repetto fails to allege harm and affirmatively alleges that he did not satisfy a precondition of the alleged contractual guarantee.

5.     Repetto's claim under 26 M.R.S.A. § 626-A fails as a matter of law because no employment relationship exists under 26 M.R.S.A. § 663(3) and the relevant award of funds is not a "wage" under 26 M.R.S.A. § 663(5).

6.     Repetto's claim under 26 M.R.S.A. § 6034 fails as a matter of law.

7.     The Complaint fails to join a party under Federal Rule of Civil Procedure 19.

8.     The equitable doctrines of estoppel and waiver bar any recovery under Count V of the Complaint.

9.     The equitable doctrines of estoppel and waiver bar any recovery under Count VII of the Complaint.

10.     Repetto's recovery, if any, must be reduced by damages not attributable to the

conduct of the School.

## JURY DEMAND

SMU, Inc. demands a trial by jury on all claims so triable.


Dated:  April 28, 2008

                              Respectfully submitted,


                              /s/ Gail Elise Abbey
                              _____
                              Daryl J. Lapp (Of Counsel, MA Bar No. 554980)
                              Christopher Silva (ME Bar No. 8934)
                              Gail Elise Abbey (Of Counsel, CA Bar No. 248702)
                              EDWARDS ANGELL PALMER & DODGE LLP
                              111 Huntington Ave.
                              Boston, MA 02199-7613
                              Phone:  617.239.0100
                              Fax:  866.794.3505

                              Attorneys for St. Matthew's University, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 28, 2008, I electronically filed Answer to Plaintiff's Complaint with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Barbara L. Goodwin, Esq.
Murray Plumb & Murray
PO Box 9785
Portland, ME 04104-5085
(207) 773-5651

Dated:  April 28, 2008

/s/ Gail Elise Abbey
_____
Daryl J. Lapp (Of Counsel, MA Bar No. 554980)
Christopher Silva (ME Bar No. 8934)
Gail Elise Abbey (Of Counsel, CA Bar No. 248702)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Ave.
Boston, MA 02199-7613
Phone:  617.239.0100
Fax:  866.794.3505

Attorneys for St. Matthew's University, Inc.