## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| BRYAN REPETTO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-CV-101 |
| | ) | |
| ST. MATTHEW'S UNIVERSITY, INC., and | ) | |
| ST. MATTHEW'S UNIVERSITY (CAYMAN) LTD. | ) | |
| | ) | |
| Defendants. | ) | |

### ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendants St. Matthew's University, Inc. ("SMU, Inc.") and St. Matthew's University

(Cayman) Ltd. ("School") answer the correspondingly numbered paragraphs of the First

Amended Complaint of Plaintiff Bryan Repetto ("Repetto" or "Plaintiff") as follows:

### PARTIES AND JURISDICTION

1.     No response is required as the Complaint speaks for itself.

2.     Defendants lack information sufficient to form a belief as to the truth of the

allegation that Repetto maintained an address in South Portland, Maine in 2005.  Defendants

admit that Repetto attended classes at the School's temporary campus in South Portland, Maine

during the Spring 2005 term.  Defendants admit that Repetto listed a Portland, Maine address on

forms submitted in 2006.  Defendants lack information sufficient to form a belief as to the truth

of the remaining allegations of this paragraph.

3.     Defendants admit that SMU, Inc. is a for-profit Delaware corporation registered

to do business in the State of Maine and that it maintains a registered agent in Augusta, Maine.

Defendants admit that the School owns St. Matthew's University School of Medicine:  a private,

Cayman Islands-based medical school which has a principal campus on Grand Cayman and, at

all times relevant to the Amended Complaint, had a branch campus in Windham, Maine run by

SMU, Inc. pursuant to a management services contract (although Hurricane Ivan rendered the

Grand Cayman campus temporarily unavailable in September 2004, and students enrolled to take

classes at the Grand Cayman campus during the Spring 2005 term received instruction at a

temporary campus in South Portland, Maine).  Defendants deny any remaining allegations of this

paragraph.

4.     Defendants admit that the School is a Cayman Islands company and a subsidiary

of SMU, Inc.  Defendants admit that the School owns St. Matthew's University School of

Medicine:  a private, Cayman Islands-based medical school which has a principal campus on

Grand Cayman and, at all times relevant to the Amended Complaint, had a branch campus in

Windham, Maine run by SMU, Inc. pursuant to a management services contract (although

Hurricane Ivan rendered the Grand Cayman campus temporarily unavailable in September 2004,

and students enrolled to take classes at the Grand Cayman campus during the Spring 2005 term

received instruction at a temporary campus in South Portland, Maine).  Defendants deny any

remaining allegations of this paragraph.

5.     No response is required to the extent this paragraph asserts conclusions of law.

Any allegations of fact against Defendants are denied.

6.      No response is required to the extent this paragraph asserts conclusions of law.

Any allegations of fact against Defendants are denied.

## FACTS COMMON TO ALL COUNTS

7.     Defendants admit that Repetto submitted transcripts from Sonoma State

University and the University of Nevada, Reno with his application for admission, and admit that

the University of Nevada, Reno transcript Repetto submitted indicates that he was awarded a

Bachelor of Science degree in Biology in 2002.  Defendants lack information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

8.      Defendants lack information sufficient to form a belief as to the truth of the allegations that Repetto planned to be a physician and had difficulty with the undergraduate pre-medical science curriculum.  Defendants admit that Repetto's grades in the courses that the School requires for admission were not as high as those of the majority of the School's Spring 2005 incoming class, but denies that Repetto's grades in these courses disqualified him from admission to the School.  Defendants deny any remaining allegations of this paragraph.

9.      Defendants admit that Repetto submitted an unofficial transcript from Ross University School of Medicine ("Ross University") with his application for admission, which was printed on November 15, 2004 and indicates that Repetto had attended Ross University for four semesters at that time.  Defendants admit that Repetto's graduate grade point average at Ross University did not meet or exceed 3.0, but denies that courses Repetto took at Ross University were required for admission, and denies that Repetto's graduate grade point average at Ross University disqualified him from admission to the School.  Defendants lack information sufficient to form a belief as to the truth of any remaining allegations of this paragraph.

10.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph.

11.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph.

12.     Defendants admit that at the time Repetto applied for admission, Fall 2004, the School's Catalog stated, "The committee selects students who exhibit the strongest potential to flourish in a medical school environment and execute the duties of a medical doctor

professionally and ethically"; and further provided, "A cumulative grade point average of 3.0 is preferred.  Applicants with lower grade point averages are encouraged to apply if they have other accomplishments or work experience that demonstrates their aptitudes"; required submission of recent MCAT scores when available; and described recommendations as "an important part of the application."  Defendants deny any remaining allegations of this paragraph.

13.     Defendants admit that Repetto's graduate grade point average at Ross University did not meet or exceed 3.0; that Repetto's undergraduate grade point average at the University of Nevada, Reno did not meet or exceed 3.0; and that Repetto's undergraduate grade point average at Sonoma State University did not meet or exceed 3.0.  Defendants lack information sufficient to form a belief as to the truth of the allegation that Repetto spoke to J.P. Yates and Darryl Frazier about his grade point average.  Defendants admit that the School's admissions policy during the Fall 2004 term was to use the highest grade achieved in each science course to calculate a student's grade point average unless certain exceptions applied, but deny that the School relied upon the calculation of Repetto's grade point average submitted with his application, rather than admissions officers' own calculations based on transcripts provided. Defendants admit that Repetto's graduate grade point average at Ross University did not meet or exceed 3.0 when recalculated using only the highest grade he achieved in each of his science courses; that Repetto's undergraduate grade point average at the University of Nevada, Reno did not meet or exceed 3.0 when recalculated using only the highest grade he achieved in each of his science courses; and that Repetto's undergraduate grade point average at Sonoma State University did not meet or exceed 3.0 when recalculated using only the highest grade he achieved in each of his science courses.  Defendants deny any remaining allegations of this paragraph.

14.     Defendants admit that Repetto's application for admission stated that he was attending Ross University at the time of his application.  Defendants deny that admissions officers of the School considered Repetto's full academic record – including test scores, recommendations, and prior experience – indicative of a lack of potential to flourish in the medical school environment.  Defendants deny any remaining allegations of this paragraph.

15.     Defendants admit that at the time Repetto applied for admission, Fall 2004, the School's Catalog stated, "If the student's credentials meet the admissions criteria, the candidate will be interviewed in person or by telephone"; and further provided, "A completed application file . . . will include . . . [o]fficial academic transcripts."  Defendants deny that admissions officers of the School admitted Repetto without a telephone interview.  Defendants admit that at the time of Repetto's admission, the School had not received an official transcript from Ross University although the School had received an unofficial transcript and had notified Repetto that he needed also to provide an official transcript.  Defendants deny any remaining allegations of this paragraph.

16.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph.

17.     Defendants admit that the School has not yet been approved in California, that receipt of a degree from the School does not render an individual eligible for licensure as a physician there, and that the School's officials at various times have been publicly optimistic that the School will be approved in California.  Defendants deny that the School's officials at any time misrepresented the likelihood of California approval.  Defendants lack information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

18.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph.

19.     Defendants admit that Repetto began attending the School in January 2005. Defendants deny any remaining allegations of this paragraph.

20.     Defendants admit that the Division of Licensing of the Medical Board of California ("Division of Licensing") inspected the School with regard to determining whether it should be approved in California.  Defendants admit that the Chief of the Licensing Program submitted a report on the site visit ("California Site Team Report") to the members of the Division of Licensing on January 24, 2005, noting that pursuant to the governing regulation the School had until February 14, 2005 to notify staff of the Division of Licensing of any factual errors in the team's report.  Defendants admit that the California Site Team Report listed the following as "Problem Areas Affecting Entire Program":  "[a]n apparently high attrition rate," "[a]n evolving, still unproven preclinical curriculum," and "[l]imited communication with the basic science program in Maine as regards course content, modifications, examinations, and the lack of formal processes for such communications."  Defendants admit that the California Site Team Report recommended denial of recognition of the School after stating, "[The School] is apparently off to a good start and gives promise of a potentially bright future.  At present, it is still in early phases of development with a very limited track record . . . .  A repeat evaluation should be undertaken after remediation of the problem areas and more evidence of satisfactory performance is available."  Defendants deny any remaining allegations of this paragraph.

21.     Defendants admit that the Medical Board of California disapproved the School on February 18, 2005, and that as a result receipt of a degree from the School does not render an

individual eligible for licensure as a physician in California.  Defendants deny any remaining allegations of this paragraph.

22.     Defendants admit that Dr. Michael Harris, then the School's president, sent an email to all of the School's students on February 20, 2005 regarding the California Site Team Report and the February 18, 2005 Medical Board of California decision not to approve the School.  Defendants lack information sufficient to form a belief as to the truth of the allegation that Repetto received a copy of this email through his School email account.  Defendants admit that Dr. Harris's email stated that the School's "Board of Directors . . . review[ed] the draft report and found it riddled with over forty factual errors"; that "Ross University and AUC were previously denied and ultimately prevailed in obtaining California approval.  So too will St. Matthew's University"; and that "[l]egal counsel has been retained to assess the rights of the University in what the Board of Directors feels has been an act of great injustice and irreparable harm caused by the actions of the California Medical Board Division of Licensing."  Defendants deny any remaining allegations of this paragraph.

23.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph so far as they concern what Repetto allegedly "learned." Defendants deny that the School attempted to withdraw its application for licensure in California during October 2004, but admit that the School attempted to withdraw its application for licensure in California on December 7, 2004 pursuant to the recommendation of the Deputy Executive Director of the California Board of Medical Examiners.  Defendants admit that the School received the California Site Team Report on December 17, 2004.  Defendants deny that the School's officials at any time misrepresented the likelihood of California approval. Defendants deny any remaining allegations of this paragraph.

24.     Defendants deny that the School's officials at any time misrepresented the likelihood of California approval or the features of the School's program.  Defendants lack information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

25.     Defendants admit that Dr. Harris's email included a link to the California Site Team Report and a document submitted by the School to the Division of Licensing on February 4, 2005 notifying the Medical Board of California of factual inaccuracies contained in the California Site Team Report ("Factual Error Notification").  Defendants deny any remaining allegations of this paragraph.

26.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph.

27.     Defendants lack information sufficient to form a belief as to the truth of the allegation that Repetto read the California Site Team Report and the Factual Error Notification by clicking on the link which Dr. Harris's email provided to him.  Defendants admit that the Factual Error Notification made assertions relating to the School's admissions policies and practices and stated, "The course text, syllabi, examinations, and content are the same in the three basic sciences courses in Cayman and Maine."  Defendants admit that the Factual Error Notification included claims about the School's faculty, facilities, research, and methods of selection of sites for clinical training.  Defendants deny any remaining allegations of this paragraph.

28.     Defendants deny that officials of the School made any false or misleading assertions.  Defendants lack information sufficient to form a belief as to the truth of the remaining allegations of this paragraph.

29.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph.

30.     Defendants lack information sufficient to form a belief as to the truth of the allegation that Repetto has family in Texas and considered that state another possible location for him to practice medicine.  Defendants admit that Mr. Yates posted the following on ValueMD Medical Schools Forum on April 12, 2005:  "Texas law states that the grad can still be licensed if the disapproval [by another state] was unfounded, which anyone who has read the publications can see it was," and "I counsel students to check the rules and laws themselves, rather than relying on others to provide the information."  Defendants deny that Texas had not recognized the organization accrediting the School before the California Site Team Report was submitted to the members of the Division of Licensing.  Defendants admit that after the California decision not to approve the School, Texas placed the School on its list of allegedly "fraudulent or substandard" institutions.  Defendants deny any remaining allegations of this paragraph.

31.     Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph.

32.     Defendants admit that Repetto moved from the School's Grand Cayman campus, where he received instruction for the Summer 2005 and Fall 2005 terms, to its campus in Windham, Maine at the beginning of the Spring 2006 term.  Defendants admit that Repetto continued in the Master's Degree in Health Science Administration program at St. Joseph's College of Maine in Standish, Maine ("St. Joseph's Program") during the Spring 2006 term. Defendants deny that Repetto began participation in the St. Joseph's Program while a student at the Grand Cayman campus, as Repetto began participation in the St. Joseph's Program while a student at the temporary campus in South Portland, Maine during the Spring 2005 term.

Defendants admit that officials of the School informed Repetto that fourth semester students at the School's Windham, Maine campus were required to remain enrolled in the St. Joseph's Program in order to continue their medical studies in Windham, Maine; and that during the Spring 2006 term, Repetto was in his fourth semester in the St. Joseph's Program.  Defendants deny any remaining allegations of this paragraph.

33.   Defendants deny the allegations of this paragraph.

34.   Defendants admit that Repetto took Pharmacology and Pathology II for the first time during the Spring 2006 term.  Defendants admit that Dr. James Pringle encouraged Repetto to withdraw from Pharmacology and Pathology II during the Spring 2006 term after Repetto informed Dr. Pringle that he would likely fail the courses.  Defendants deny that Dr. Pringle suggested that withdrawals should be taken lightly.  Defendants admit that Dr. Pringle told Repetto that the withdrawals would not significantly impact him in a negative way with respect to residency programs if he subsequently retook and did well in the courses.  Defendants deny any remaining allegations of this paragraph.

35.   Defendants admit that Repetto took and failed Pharmacology and Pathology II during the Summer 2006 term.  Defendants deny any remaining allegations of this paragraph.

36.   Defendants deny that Dr. Pringle or any other official of the School ever told Repetto that two sections of a course taught by two different professors would be "equal," but Defendants admit that the Factual Error Notification stated, and Dr. Pringle assured Repetto, that officials of the School took steps to ensure that courses taught in Windham, Maine and courses taught in Grand Cayman would be as equal as possible.  Defendants lack information sufficient to form a belief as to the truth of the allegation that Repetto "therefore did not consider returning to the Cayman Islands campus to attempt these courses."  Defendants deny that Dr. Pringle told

Repetto that he could not return to the Grand Cayman campus once he had enrolled in classes taught in Windham, Maine.  Defendants lack information sufficient to form a belief as to the truth of the allegations of this paragraph so far as they concern what Repetto allegedly "learned." Defendants deny that the failure rate at the Grand Cayman campus was significantly lower than the failure rate at the Windham, Maine campus.  Defendants admit that students taught in Windham, Maine were given the opportunity to request return to the Grand Cayman campus; but deny that students taught in Windham, Maine who were having difficulty passing classes were instructed or encouraged to return to the Grand Cayman campus in order to more easily pass classes.  Defendants deny any remaining allegations of this paragraph.

37.     Defendants admit that Repetto took Pharmacology and Pathology II for the third time during the Fall 2006 term.  Defendants deny any remaining allegations of this paragraph.

38.     Defendants admit that Dr. Pringle met with Repetto on November 7, 2006, and that Repetto took the Fall 2006 Pathology II examination administered on November 8, 2006. Defendants deny that Dr. Pringle told Repetto he would fail the courses.  Defendants admit that Dr. Pringle told Repetto that he should be considering other options since Repetto had withdrawn from Pathology II and Pharmacology once, failed both classes once, and was failing Pathology II and Pharmacology after multiple examinations in each course.  Defendants admit that Dr. Pringle told Repetto that Dr. Pringle had never made a grade exception for a student, but Defendants deny that Dr. Pringle told Repetto that the School had never made a grade exception for a student.  Defendants deny any remaining allegations of this paragraph.

39.     Defendants admit that Repetto failed the November 8, 2006 Pathology II examination.  Defendants admit that Dr. Pringle met with Repetto after Repetto failed both the November 8, 2006 Pathology II examination and the November 14, 2006 Pathology

examination.  Defendants deny that Dr. Pringle raised the possibility of readmission to the School during that meeting.  Defendants admit that Dr. Pringle stated that if Repetto took remedial courses in both Pathology and Pharmacology with demonstrated success his chances of readmission to the School upon reapplication would be increased.  Defendants deny any remaining allegations of this paragraph.

40.     Defendants admit that Repetto failed Pharmacology and Pathology II for the second time during the Fall 2006 term.  Defendants deny any remaining allegations of this paragraph.

41.     Defendants admit that the Student Handbook produced January 2004 states, "In all cases of academic dismissal, students are not eligible for re-admission unless the student is successful in an Appeals Committee review."  Defendants admit that Appendix D of the Student Handbook, entitled "Academic Grievances:  Reporting and Hearing Procedures" explains in detail the procedure for petitioning the Grievance Committee for review of grades and appealing decisions of the Grievance Committee.  Defendants deny any remaining allegations of this paragraph.

42.     Defendants admit that Repetto inquired about the procedures for appeal and readmission during the Fall 2006 term, prior to receiving his final grades for that term. Defendants admit that Repetto wrote to Dr. Gordon Green, Dr. Ezzeldin Nasser, Dr. Gary McCutcheon, and Dr. Pringle during the Fall 2006 term.  Defendants deny that Dr. Nasser did not reply to Repetto's inquiry.  Defendants deny that Dr. Green indicated that he would support Repetto's readmission should he be dismissed, but admit that Dr. Green stated he would support Dr. Pringle's advice with regards to readmission.  Defendants admit that Dr. Green stated that "any student failing a course take [sic] their case to the grievance committee."  Defendants admit

that Dr. McCutcheon told Repetto that he would discuss the issue of Repetto's possible readmission with the deans.  Defendants deny any remaining allegations of this paragraph.

43.     Defendants admit that the School's registrar sent a letter to Repetto dated December 13, 2006 informing Repetto that he had been dismissed "due to a combined total of three failures **and/or** withdrawals from the same course," and stating, "Students have the option **at the end of** each semester to challenge the courses failed that semester with the Grievance Committee.  Please contact Dr. Nasser at enasser@smu.cayman.com to discuss the option and the procedures involved.  If you file a grievance and the Committee overturns your grade(s) such that you do not have a combined total of three failures and/or withdrawals in the same course, then you will be automatically reinstated and may attend classes this semester." (emphasis supplied).  Defendants deny any remaining allegations of this paragraph.

44.     Defendants admit that Repetto attempted to contact Dr. Nasser via email to discuss an appeals committee review of his dismissal on December 16, 2006 and January 2, 2007, during the School's break while Dr. Nasser was away.  Defendants admit that Dr. Nasser did not reply to either of Repetto's emails seeking to discuss an appeals committee review of his dismissal.  Defendants admit that during the School's break Repetto contacted Dr. Green inquiring about the procedures for submission of a grievance and readmission.  Defendants deny that Dr. Green told Repetto to contact Dr. Pringle.  Defendants admit that Dr. Green forwarded Repetto's email to Dr. McCutcheon.  Defendants admit that Repetto contacted Dr. Jerry Thornton inquiring about the procedures for submission of a grievance and readmission during the School's break.  Defendants admit that Dr. Thornton recommended that Repetto contact Dr. McCutcheon.  Defendants deny any remaining allegations of this paragraph.

45.     Defendants admit that Repetto never submitted a petition to the Grievance Committee.  Defendants deny that students of the School were told that they could appeal a grade or seek readmission after an academic dismissal without first following the procedures for petitioning the Grievance Committee explained in Appendix D to the Student Handbook. Defendants admit that Dr. McCutcheon sent Repetto an email on January 5, 2007 which read: "Per university policy, I have received your request to review your academic dismissal. Unfortunately, your request to reinstate you into SMU is denied for two specific reasons and for some general observations.  First . . . you have far exceeded the 24 failing hours that prompts dismissal.  You have failed 30 hours.  The most recent failing grades were 59 and 63 and both of these course [sic] were on second attempts. . [sic]  Second . . . you have either withdrawn or failed Pathology II on three occasions.  [P]er the guidance published in the student handbook this alone is cause for dismissal.  General observations show that by current standards you would not have been admitted to SMU based on your weak undergraduate grades and you would not have been transferred from Ross with the poor performance at that institution.  The combination of weak undergrad, weak performance at Ross, and 30 documented failing credits at St. Matthew's all speak to little likelihood that you will become a successful physician.  Your dismissal is reaffirmed.  I wish you well in future endeavors."  Defendants deny any remaining allegations of this paragraph.

46.     Defendants deny that the financial aid office's notification that Repetto had exhausted his financial aid eligibility in the Basic Science program (as opposed to the Clinical Science program) was recent.  Defendants admit the remaining allegations of this paragraph.

47.     Defendants deny the allegations of this paragraph.

48.     Defendants lack information sufficient to form a belief as to the truth of the
allegation that Repetto earned a GPA of 3.7 in the St. Joseph's Program.  Defendants deny that
had Repetto filed a petition with the Grievance Committee he would have been able to provide
evidence supporting a passing grade in the classes he had failed.  Defendants deny that Repetto's
scores on the Summer 2006 and Fall 2006 Pharmacology and Pathology II shelf examinations
and his grade point average in the St. Joseph's Program would have provided evidence
supporting a passing grade in the classes he had failed.  Defendants deny any remaining
allegations of this paragraph.

49.     Defendants admit that Repetto performed work-study in the School's Maine
Campus Library during the Summer 2006 and Fall 2006 terms, and that the School awarded
students $15 per properly documented hour for such work during the Summer 2006 term and $10
per properly documented hour for such work during the Fall 2006 term.  Defendants admit that
Repetto served as a Teaching Assistant for Patient-Doctor 4, and that the School awarded
students $15 per properly documented hour for such work during the Summer 2006 term and $10
per properly documented hour for such work during the Fall 2006 term.  Defendants deny any
remaining allegations of this paragraph.

50.     Defendants admit that the School customarily awarded funds to its students for
their work-study by crediting the amount awarded against their tuition or other fees owed to the
School.  Defendants deny any remaining allegations of this paragraph.

51.     Defendants deny the allegations of this paragraph.

52.     Defendants deny the allegations of this paragraph.

53.     Defendants admit that the School did not award Repetto funds for work as a
Teaching Assistant for Patient-Doctor 4 because Repetto never properly documented hours

worked as a Teaching Assistant for Patient-Doctor 4. Defendants deny that the School owes

Repetto any funds for such work. Defendants deny any remaining allegations of this paragraph.

54.     Defendants admit that Repetto made repeated inquiries regarding the award of

funds for work performed in the library and as a Teaching Assistant to which Defendants

responded. Defendants deny that the School refused to make payment of funds owed to Repetto.

Defendants deny any remaining allegations of this paragraph.

55.     Defendants admit that the officials of the School with whom Repetto interacted

were employees or agents of the School.

56.     No response is required to the extent this paragraph asserts a conclusion of law.

Any allegations of fact against Defendants are denied.

## COUNT I:  INTENTIONAL MISREPRESENTATION – SMU REBUTTAL TO CALIFORNIA REPORT

57.     Defendants incorporate by reference paragraphs 1-56 above.

58.     Defendants deny the allegations of this paragraph.

59.     Defendants deny the allegations of this paragraph.

60.     No response is required to the extent this paragraph asserts a conclusion of law.

Any allegations of fact against Defendants are denied.

61.     SMU, Inc. denies the allegations of this paragraph.

62.     SMU, Inc. denies the allegations of this paragraph.

63.     SMU, Inc. denies the allegations of this paragraph.

64.     No response is required to the extent this paragraph asserts conclusions of law.

Any allegations of fact against Defendants are denied.

## COUNT II:  NEGLIGENT MISREPRESENTATION – SMU REBUTTAL TO CALIFORNIA REPORT

65.     Defendants incorporate by reference paragraphs 1-64 above.

66.     Defendants deny the allegations of this paragraph.

67.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

68.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

69.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

70.     SMU, Inc. denies the allegations of this paragraph.

**COUNT III:  INTENTIONAL MISREPRESENTATION – SMU PROGRAM**

71.     Defendants incorporate by reference paragraphs 1-70 above.

72.     Defendants deny that the Student Handbook contains descriptions of the course and other educational opportunities offered by the School, but admit that the School's Catalogs for 2004-2005, 2005, and 2005-2006 contain descriptions of the course and other educational opportunities offered by the School and the Student Handbook contains descriptions of other School-related opportunities.  Defendants deny any remaining allegations of this paragraph.

73.     Defendants deny that the Student Handbook contains false representations regarding the academic program at the School.  Defendants deny that the Student Handbook describes an "Individual Advancement Pathway" allowing students who are struggling to take a less rigorous course load, but admit that the School's Catalogs for 2004-2005 and 2005 describe an "Individual Advancement Pathway" allowing "students the option to design their advancement through the coursework of the Basic Sciences, in consultation with a faculty advisor . . . [and] choose to participate in coursework in six semesters, instead of the five

semesters of the accelerated program." Defendants deny that no such program existed. Defendants deny any remaining allegations of this paragraph.

74.     Defendants deny the allegations of this paragraph.

75.     Defendants deny that officials of the School made misrepresentations about the nature of the School's programming. Defendants deny that officials of the School ever told Repetto that two sections of a course taught by two different professors would be "equal." Defendants admit that officials of the School assured Repetto that they took steps to ensure that courses taught in Windham, Maine and courses taught in Grand Cayman would be as equal as possible. Defendants deny that officials of the School made untrue statements regarding the comparative difficulty of courses taught in Windham, Maine and courses taught in Grand Cayman. Defendants deny any remaining allegations of this paragraph.

76.     Defendants deny the allegations of this paragraph.

77.     Defendants deny the allegations of this paragraph.

78.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

79.     Defendants deny the allegations of this paragraph.

80.     Defendants deny the allegations of this paragraph.

81.     Defendants deny the allegations of this paragraph.

82.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

## COUNT IV:  NEGLIGENT MISREPRESENTATION – SMU PROGRAM

83.     Defendants incorporate by reference paragraphs 1-82 above.

84.     Defendants deny the allegations of this paragraph.

85.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

86.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

87.     Defendants deny the allegations of this paragraph.

88.     Defendants deny the allegations of this paragraph.

## COUNT V:  BREACH OF CONTRACT

89.     Defendants incorporate by reference paragraphs 1-88 above.

90.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

91.     Defendants deny the allegations of this paragraph.

92.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

93.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

94.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

95.     Defendants deny the allegations of this paragraph.

96.     No response is required to the extent this paragraph asserts conclusions of law. Any allegations of fact against Defendants are denied.

## COUNT VI:  UNPAID WAGES (26 M.R.S.A. § 626-A)

97.     Defendants incorporate by reference paragraphs 1-96 above.

98.     Defendants deny that the School failed to award Repetto funds for hours he worked in the library.  Defendants admit that the School did not award Repetto funds for work as a Teaching Assistant for Patient-Doctor 4, but deny that the School owes Repetto any funds for such work because Repetto never properly documented hours worked as a Teaching Assistant for Patient-Doctor 4.  Defendants deny any remaining allegations of this paragraph.

99.     Defendants admit that Repetto demanded payment for funds he allegedly earned as a Teaching Assistant for Patient-Doctor 4.  Defendants admit that the School refused to award Repetto funds for work as a Teaching Assistant for Patient-Doctor 4 because Repetto never properly documented hours worked as a Teaching Assistant for Patient-Doctor 4, but deny that the School refused to make payment of funds owed to Repetto.  Defendants deny any remaining allegations of this paragraph.

100.    No response is required to the extent this paragraph asserts conclusions of law.  Any allegations of fact against Defendants are denied.

101.    No response is required to the extent this paragraph asserts conclusions of law.  Any allegations of fact against Defendants are denied.

102.    No response is required to the extent this paragraph asserts conclusions of law.  Any allegations of fact against Defendants are denied.

## AFFIRMATIVE DEFENSES

1.     The Court lacks personal jurisdiction over SMU, Inc., since SMU, Inc. did not directly take the actions alleged in the Amended Complaint or otherwise avail itself of the laws of the State of Maine such that it should reasonably expect to be hailed into court in Maine.

2.     Venue is improper.

3.      The Amended Complaint fails to state a claim upon which relief can be granted against SMU, Inc. because the School at all relevant times owned St. Matthew's University School of Medicine, and any liability for the acts, omissions, or agreements of that entity cannot be attributed to SMU, Inc.

4.      The Amended Complaint fails to state a claim upon which relief can be granted with respect to Count V, since Repetto fails to allege harm and affirmatively alleges that he did not satisfy a precondition of the alleged contractual guarantee.

5.      Repetto's claim under 26 M.R.S.A. § 626-A fails as a matter of law because no employment relationship exists under 26 M.R.S.A. § 663(3) and the relevant award of funds is not a "wage" under 26 M.R.S.A. § 663(5).

6.      The equitable doctrines of estoppel and waiver bar any recovery under Count V of the Amended Complaint.

7.      Repetto's recovery, if any, must be reduced by damages not attributable to the conduct of the School.

## JURY DEMAND

SMU, Inc. demands a trial by jury on all claims so triable.


Dated:  September 4, 2008

                                        Respectfully submitted,


                                        /s/ Christopher Silva
                                        _____
                                        Daryl J. Lapp (Of Counsel, MA Bar No. 554980)
                                        Christopher Silva (ME Bar No. 8934)
                                        Gail Elise Cornwall (Of Counsel, CA Bar No. 248702)
                                        EDWARDS ANGELL PALMER & DODGE LLP
                                        111 Huntington Ave.
                                        Boston, MA 02199-7613

BOS111 12309796.1

Phone:  617.239.0100
Fax:  866.794.3505

Attorneys for St. Matthew's University, Inc. and
St. Matthew's University (Cayman) Ltd.

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2008, I electronically filed **Answer to Plaintiff's First Amended Complaint** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Barbara L. Goodwin, Esq.
Murray Plumb & Murray
PO Box 9785
Portland, ME 04104-5085
(207) 773-5651

Dated:  September 4, 2008

/s/ Christopher Silva
_____
Daryl J. Lapp (Of Counsel, MA Bar No. 554980)
Christopher Silva (ME Bar No. 8934)
Gail Elise Cornwall (Of Counsel, CA Bar No. 248702)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Ave.
Boston, MA 02199-7613
Phone:  617.239.0100
Fax:  866.794.3505

Attorneys for St. Matthew's University, Inc. and
St. Matthew's University (Cayman) Ltd.

BOS111 12309796.1